**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0174n.06
Filed: March 7, 2005

**Nos. 03-6200/6201**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| EMMA JEAN BILBREY, ) | |
| ) | |
| Petitioner-Appellant, ) | |
| Cross-Appellee, ) | |
| ) | ON APPEAL FROM THE UNITED |
| v. ) | STATES DISTRICT COURT FOR THE |
| ) | MIDDLE DISTRICT OF TENNESSEE |
| WAYNE DOUGLAS, Warden, ) | |
| ) | |
| Respondent-Appellee ) | |
| Cross-Appellant. ) | |

Before: DAUGHTREY and SUTTON, Circuit Judges, and FORESTER,[*] District Judge.

**PER CURIAM.** In this consolidated appeal, the petitioner, Emma Bilbrey, challenges the district court's denial of habeas relief under 28 U.S.C. § 2254, and the respondent, Warden Wayne Douglas, cross-appeals the district court's decision to apply the doctrine of equitable tolling to the one-year statute of limitations set out in the Antiterrorism and Effective Death Penalty Act (AEDPA) at 28 U.S.C. § 2244(d). Because we conclude that the ruling on equitable tolling cannot be sustained, we find it unnecessary to review the district court's determination on the merits. We therefore affirm the judgment entered below, but for different reasons from those given by the district court.

---

[*]The Hon. Karl S. Forester, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

Bilbrey was indicted in state court in 1991 on charges of first-degree murder and aggravated robbery. She was convicted on both counts at her first trial, but the convictions were overturned on appeal because a substitute judge, who took over the case mid-trial when the original judge became ill, failed to "certify that he ha[d] familiarized himself with the record of the trial." She was again convicted on retrial, and those convictions were affirmed by the Tennessee appellate courts, concluding with an order of the Tennessee Supreme Court denying her application for permission to appeal on December 4, 1995. Bilbrey did not file a petition for certiorari to the United States Supreme Court, and her conviction therefore became final 90 days later.

With the passage of AEDPA, the one-year limit for filing a § 2254 petition in federal court began to run on April 24, 1996, the date that AEDPA took effect, but was tolled when Bilbrey initiated a *pro se* petition for post-conviction relief in the state trial court on November 18, 1996. At that point, 208 days had elapsed under § 2244(d). Post-conviction relief was denied by the trial court, and the appeal in that case became final on April 19, 1999, giving Bilbrey until September 22, 1999 – or 157 additional days – to file a federal habeas petition. However, she did not file the petition in this case until April 11, 2000, over six months after the statutory period had run out.

Upon motion of the petitioner to apply equitable tolling on the basis of her mental and educational incapacity, the district court permitted counsel to collect and file Bilbrey's mental health records, which reflected that she had a low I.Q. and only a few years of elementary

schooling.  The records also indicate that she had sustained a head injury in 1987 and that she suffered from various forms of mental illness.  Although there was no testimony in court concerning her mental capacity, the district court had before it records indicating diagnosis and treatment from April 1996 to October 1998 and from June 2000 to March 2001.  The earliest entries in these records reflect a suicide attempt in August 1996 and treatment thereafter for "depressive disorder," "personality disorder," and "seizures."  There were intermittent entries in 1996 and 1997 indicating that Bilbrey was suffering from bipolar disorder and possible schizophrenia, sometimes involving hallucinations.  She was regularly medicated with Depakote (for seizures and bipolar disorder), trazodone (for depression), and Prozac (also for depression).  By April 1997, however, her symptoms were described as "controlled," and she was said to be "progressing well in psychotherapy."  There are no records of her treatment between the end of 1998 and the middle of 2000, but by June 2000, Bilbrey was no longer housed in a special needs facility. She had been transferred into the prison's general population, and she was described as "stable," "cooperative," "alert," "oriented," with "no psychosis and no suicidal thoughts or ideations."  She was being treated for depression and was participating in group therapy, including a "problem solving group," and was noted as having made a "good response."  A year later, she was still in the general population, and her mental status was described as normal; she was then being treated for "depression, hypothyroidism, and chronic neck pain."

Although the records from the most crucial months of the limitation period are not in the record on appeal, it is not difficult to conclude that Bilbrey had continuing mental health

problems during the entire five years in question, commencing with a suicide attempt in 1996 and improving over time to the point that she could be released into the general population four years later and treated only for depression. Looking at the broad picture, but perhaps not the details, the district judge agreed with petitioner's counsel that the one-year statute of limitations should be tolled for an unspecified period because of her "longstanding and severe mental illnesses." The obvious flaw in this analysis, however, is the fact that even during the periods when Bilbrey's mental condition appears to have been the most impaired, she continued to file litigation in the state courts. The post-conviction petition in the trial court was filed *pro se* less than four months after her attempted suicide in 1996, followed by an amended petition filed in February 1997, a hearing in the trial court in October 1997, a notice of appeal filed in the state court of appeals in November 1997, and an application for permission to appeal to the state supreme court that was denied on April 19, 1999, the date on which the statute of limitations once again began to run. Although we have no medical records reflecting Bilbrey's mental capacity in 1999, the last treatment plan in the record, dated October 1, 1998, and covering a six-month period from then until April 1, 1999, indicates that Bilbrey was "stable on medication."

The state of the record leads us to the conclusion that the respondent is correct in contending that the petitioner has failed to establish a causal connection between her mental condition and her ability to file a timely petition. Indeed, it appears from the allegations in the amended complaint that the actual cause of the delay was a miscalculation of the statutory period by the inmate legal aide who thought that the one-year limit under

AEDPA ran from the date on which the judgment in her state post-conviction litigation became final, rather than the date on which the judgment of conviction became final, tolled by the period during which the state post-conviction litigation was active. That mistake, of course, does not support equitable tolling of § 2244(d).

At oral argument, counsel on both sides of this case agreed that our review of the district court's determination with regard to the statute of limitations was for abuse of discretion. However, recent opinions in this circuit hold otherwise. An abuse-of-discretion standard is applicable only when the underlying facts on which tolling is based are in dispute. When, as here, those facts are undisputed and the district court's decision to grant or deny equitable tolling involves only a question of law, our review is *de novo*. *See*, *e.g.*, *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004); *Steiner v. Henderson*, 354 F.3d 432, 434 (6th Cir. 2003); *Dunlap v. United States*, 250 F.3d 1001, 1007-08 n.2 (6th Cir. 2001). Reviewing the district court's decision in this case *de novo*, we conclude that its § 2244(d) ruling cannot be sustained as a matter of law.

The district court filed a detailed and thoroughly well-analyzed opinion on the merits, concluding that the petitioner's claims, "individually and collectively, d[id] not warrant the granting of the writ." We agree, and we would affirm the denial of relief on substantive grounds, but for our conclusion that the district court lacked jurisdiction to address the merits because the statute of limitations had run prior to the filing of the petition. We therefore

AFFIRM the judgment of the district court, but on grounds distinct from those set out in the court's final order.